WILLIAM E. WRAGG, Appellant, v. NEWTON C. WRAGG et al., Appellees.

No. 39427.

940

JUNE 24, 1929.

*Howard L. Bump* and *Paul W. Walters,* for appellant.

*White & Clarke* and *Emmert & James,* for Newton C. Wragg, appellee.

*Emmert & James,* for Citizens Savings Bank of Dallas Center.

*R. K. Craft,* for administrator of estate of Hannah Wragg Branch and L. V. Russell, referee in partition.

GRIMM, J.—The facts, briefly stated, as set forth in the petition, are: One John Wragg died in the year 1896, leaving a widow, one Hannah Wragg, who afterward intermarried with  one Branch, and also leaving three sons and a daughter. Hannah Wragg Branch died in the year 1926, about 30 years after the death of her husband, John Wragg. John Wragg left a will, by the terms of which he devised to Hannah Wragg a life estate in certain real estate, and the remainder to his four children, share and share alike. Sometime prior to November, 1909, the defendant Newton C. Wragg gave his note for some $2,500, with Hannah, his mother, as surety, to the defendant Citizens Savings Bank of Dallas Center, Iowa, on which there was thereafter rendered a judgment for $2,511.59 and costs, and a certain tract of land owned by said Newton C. Wragg was sold in part satisfaction of said judgment, on or about March 16, 1910. There being an unpaid balance on the above judgment, said defendant bank caused an execution to be issued and placed in the hands of the sheriff of Dallas County, with instructions to levy on property either of the defendant Newton C. Wragg or Hannah Wragg Branch, to satisfy the balance of said judgment of $1,003.81. It is claimed that the sheriff threatened and was about to levy on the undivided interest of said Newton C. Wragg in the property in which, under the will of John Wragg, said Newton C. Wragg had a remainder interest, and also on the undivided interest of Hannah Wragg Branch, which was thought to be a life estate. Plaintiff had an undivided one-fourth interest in said lands, and he claims that, to have had said property seized and sold (both the life estate of Hannah Wragg Branch and Newton C. Wragg's undivided one-fourth interest in said estate) would impair and injure his (the plaintiff's) rights in and to said property. It is then alleged that plaintiff paid to said sheriff the sum of $800, and his mother, Hannah, paid $208.05, in satisfaction of said balance unpaid on said judgment, and that Hannah Wragg Branch did not, during her lifetime, repay plaintiff for the money thus paid by him on said balance of said judgment. There is the further allegation that said payments were made for the benefit of said Newton C. Wragg; that he has had the benefit of same; and that he has not reimbursed plaintiff for said advancement of said funds. By reason of all these facts, plaintiff asks

that he be subrogated to the rights of the Citzens Savings Bank of Dallas Center, and to have the judgment thus paid off by himself and Hannah Wragg Branch reinstated, and that he be permitted to enforce said judgment, thus reinstated, in any way he may be able to enforce the same, and for further equitable relief, etc.

The defendant Newton C. Wragg filed a motion to strike from the petition all allegations tending to show an indebtedness of Newton C. Wragg to Hannah Wragg Branch, on the ground of misjoinder of causes of action; and the trial court sustained the motion. Subsequently, the defendant Newton C. Wragg filed a motion to dismiss the cause, which said motion contains nine grounds. This motion was subsequently (on the 8th day of March, 1928), sustained. Prior to that time, the defendant Citizens Savings Bank filed an answer, stating that it had no interest in the controversy. The defendant L. V. Russell, as administrator of the estate of Hannah Wragg Branch, filed an answer June 5, 1928, almost three months after the final disposition of the case by the trial court. On the same date, L. V. Russell, as referee in partition, filed an answer. The notice of appeal was dated May 29, 1928.

The main allegations of the petition relied upon by the plaintiff as a basis for recovery against Newton C. Wragg are as follows:

"That at the said time (when the money was paid), the said sheriff threatened and was about to levy upon the undivided interest of Newton C. Wragg in the property described in this petition, and upon the undivided interest of Hannah Wragg Branch, which was then thought to be a life estate. That your plaintiff, William E. Wragg, had an undivided one-fourth interest in the real estate herein described, and to have the said property seized and sold, both the life estate of his mother, Hannah Wragg Branch, and his undivided one-fourth interest in the said estate, would impair and injure his rights in and to the said property."

Then follow allegations in reference to the illness of the mother, and, on account of her physical condition, her inability to see the sheriff. Then there is this allegation:

"That, to prevent the seizure and sale of the said undivided

interest of Newton C. Wragg and the life estate claimed by his mother, and to prevent her from being harassed, and to protect his own interests in the said property, the plaintiff furnished and paid to the sheriff, for the purpose of satisfying the said judgment, the sum of $800, and Hannah Wragg Branch paid the balance, to wit, $208.05.''

There follows that the sums were advanced and received by Newton C. Wragg for his benefit, to discharge a lien against his interest in the above-described real estate, and to prevent the seizure and sale thereof; that the said sums were advanced ''for his benefit, with the expectation that the said Newton C. Wragg would repay the said sum to the plaintiff and to Hannah Wragg Branch, or her legal representative.'' The petition also contains the following allegations:

''That there was no intention on the part of William E. Wragg or his mother to gratuitously furnish the money for the purpose of discharging said lien, but was with the expectation and understanding that the said Newton C. Wragg would repay to the said William E. Wragg and his mother the said sum so paid.''

We are thus called upon to determine whether the plaintiff is entitled to recover of Newton C. Wragg $800, with interest from March 29, 1910, and whether the judgment lien discharged by the plaintiff should be restored upon the undivided interest of the defendant Newton C. Wragg in the real estate described; whether plaintiff and Russell, the administrator, be subrogated to all the rights of the said judgment and the lien thereof against the land of the defendant Newton C. Wragg.

I. It will be noted that there is no claim that William E. Wragg was under any legal obligation to pay the whole or any part of the judgment referred to. The only allegation is that a seizure of Newton C. Wragg's one-fourth interest and the life estate of the mother ''would impair and injure his rights in and to the said property.'' This manifestly is a mere conclusion, and one which, upon the whole petition, is not sustained. There might follow an inconvenience, but it is difficult to see in what manner there would follow what could be considered in the courts as an injury to the rights of the defendant Newton C. Wragg.

There is also the allegation that Newton C. Wragg received the benefit of the discharge of the lien. There is no allegation that he ratified, either expressly or impliedly, the payment made by the plaintiff.

There is no allegation that the payment was made by the plaintiff at the request of Newton C. Wragg, nor upon any express agreement between the plaintiff and Newton C. Wragg. The allegation is that the payments were made "for his benefit, with the expectation that the said Newton C. Wragg would repay the said sum to the plaintiff and to Hannah Wragg Branch, or her legal representative." There is nowhere in the petition a statement of facts from which the word "expectation" can be construed to mean an implied promise or agreement on the part of Newton C. Wragg to reimburse the plaintiff. There is no sufficient pleading of facts in the petition to warrant the conclusion that the words "but was with the expectation and understanding that the said Newton C. Wragg would repay to the said William E. Wragg and his mother the sum so paid," amounted to an implied promise or agreement on the part of the defendant Newton C. Wragg to repay the plaintiff. The plaintiff was in no sense a surety on the indebtedness of Newton C. Wragg.

A very large number of the adjudicated cases on the question of subrogation are based upon the text found in 5 Pomeroy's Equity Jurisprudence (4th Ed.) 5184, Section 2344, which reads as follows:

"Payment of the debt of another, as by a mere volunteer, will not, of itself, entitle the party making the payment to subrogation. Equity will relieve, in general, only those who could not well have relieved themselves, and these may be divided roughly into the three classes already suggested, that is: First, those who act in performance of a legal duty, arising either by express agreement or by operation of law; second, those who act under the necessity of self-protection; third, those who act at the request of the debtor, directly or indirectly, or upon invitation of the public, and whose payments are favored by public policy."

From the Iowa cases on the subject, we have the following:

"But where a person is in no manner bound, and on his own motion, in the absence of a contract, or expectation that he will

be substituted in the place of the creditor, pays the debt, he will be regarded as an intermeddler, and not entitled to subrogation.'' *Wormer & Son v. Waterloo Agric. Works,* 62 Iowa 699, 702.

The word ''expectation,'' as used in the foregoing quotation, refers to an implied contract, warranted from the facts and circumstances surrounding the transaction. There is no pleading of facts here from which any implied contract can be gathered.

Again, this court said:

''But if the parties intended to discharge the mortgage, and the debt was in fact paid, and not transferred to plaintiff, the cancellation must stand, and the lien be regarded as discharged. The mere fact that plaintiff's interest would have been better protected by permitting the lien to stand will not control against the intention, clearly established. The law will permit a party in such a case, as in others, to act and contract in a manner which would not result to his interest.'' *Weidner v. Thompson,* 69 Iowa 36, 38.

In this connection, it will be noted that, in the case at bar, the money furnished by the plaintiff, together with the money furnished by the mother, paid off and discharged the judgment. There was no attempt to take an assignment of the judgment, nor is there any showing that it was intended that the plaintiff should be protected by any of the rights of the judgment creditor.

''It has always been held that a party who, on his own motion, discharges the debt of another, without any agreement with either the debtor or creditor in relation to how he shall be reimbursed, is regarded as a mere volunteer, or, as some of the cases express it, an intermeddler, and is not entitled to the benefit of the mortgage or collateral security held by the creditor. * * * But now it is held by many of the courts that, where a third person pays the debt at the instance of the debtor, and upon an agreement or understanding with the debtor that he shall be entitled to the benefit of the security held by the creditor, equity will compel the debtor to do justly, and will substitute the person who discharges the debt to all the rights of the creditor whose claim the third person has discharged.'' *Heuser v. Sharman,* 89 Iowa 355, at page 359.

"From the many authorities cited we understand it to be undisputed that the law is that one who voluntarily pays a lien debt of another, or who merely furnishes the money to the lien holder to pay his debt, is not entitled to subrogation; but one who pays such a debt under compulsion, or to save himself from loss, or upon an agreement for subrogation, is entitled to be subrogated to the rights of the lien holder." *National Life Ins. Co. v. Ayres,* 111 Iowa 200.

Later, this court adopted, with approval, the language of the Supreme Court of New Jersey in *Gore. v. Brian* (N. J.), 35 Atl. 897, as follows:

" 'The doctrine of these cases is that the mere payment of a debt by one not bound to see that it is paid, or by one who is not affected in his property rights by its nonpayment, will not entitle the payer to subrogation; nor will an understanding existing in the mind of the payer that he will be entitled to subrogation so entitle him, unless this mental condition is produced by some conventional arrangement between the payer and either the creditor or debtor that this will be the consequence of the payment.' " *Kent v. Bailey,* 181 Iowa 489, at 496.

The plaintiff has not so pleaded as to bring himself within the foregoing requirements of this court. It necessarily follows that, as to the money which he advanced to the payment and discharge of the lien of the bank against the property of the defendant, he is not entitled to be subrogated to the rights of the bank as a judgment creditor.

II. It is next claimed that the payment was made by the plaintiff at the request of the mother, who was surety on the obligation. A careful examination of the petition discloses that nowhere therein is there an allegation that the payment by the plaintiff was made at the request of Hannah Wragg Branch, surety. The allegation is that the mother of the plaintiff was sick and afflicted, and unable to see the sheriff, by reason of her physical condition; that, to prevent the seizure and sale of the undivided interest of Newton C. Wragg and the life estate claimed by his mother, and to prevent her from being harassed, and to protect his own interests in the said property, plaintiff furnished and paid to the sheriff, for the purpose of satisfying the said judgment, the sum of $800. Hannah Wragg Branch

paid the balance. It is true, there is in the petition the allegation that the sums were thus advanced, but there is no allegation in the petition from which it can be even inferred that the mother induced the plaintiff to make the said payment, by any promise or agreement of any kind, whether in relation to procuring an assignment of the judgment or otherwise.

Entirely to the contrary, the only interpretation to be put upon the language of the petition is that both the plaintiff and the mother, at the time they made the payments in controversy, fully intended that the judgment held by the bank should be then and there fully paid, and all liens in connection therewith discharged. It is claimed that the judgment lien was discharged under the belief on the part of the plaintiff that he was thereby protecting his own rights, which were being threatened. If this be assumed to be the case, an easy and convenient remedy was open to him. He should have secured an assignment of the judgment. Furthermore, there have been other remedies open to him in the intervening years, by which he might have protected his rights, if any he had.

III. The trial court correctly sustained the motion of the defendant to strike from the petition all allegations tending to show an indebtedness of the defendant Newton C. Wragg to Hannah Wragg Branch, on the ground that there was a misjoinder of causes of action in favor of the plaintiff and the said Hannah Wragg Branch. There is no allegation in the petition upon which, as a basis, the plaintiff is entitled to any relief, if any, primarily belonging to the estate of Hannah Wragg Branch. The right, if any, exists in favor of the administrator of the estate. The plaintiff has not shown any right to act for or in the administrator's behalf in an attempt to collect from the defendant.

IV. It is next claimed that the appellant is entitled to judgment, regardless of whether or not the lien be restored. It is claimed that by the motion (demurrer), the defendant admitted that the plaintiff paid a debt of his, and that he (the defendant) has accepted the benefits of it.

As previously stated, there is in this petition no allegation of an express request on the part of the defendant to the plaintiff to pay the money involved. We are unable to find any such allegations in the petition as warrant the finding of an implied request

on the part of the defendant. There is no allegation that the defendant subsequently ratified the act of the plaintiff. It is alleged that "the said sums were advanced and received by Newton C. Wragg for his benefit," but an examination of the entire petition discloses the fact that, at the time, and ever since, the said Newton C. Wragg was a nonresident of the state of Iowa, living in the state of Utah; and it appears from the petition that the money was paid, not to the defendant, but to the sheriff, in the satisfaction of a judgment on behalf of the Citizens Savings Bank of Dallas Center, Iowa. There is no allegation of any affirmative act on the part of the defendant in receiving this money. In fact, from the whole petition it appears that he had no opportunity to reject, much less receive, the money.

"It is elementary law that, in order to recover money paid to the use of another, where the party paying was under no obligation so to do, the payment must have been moved by a previous request from the party to whose use the money was paid. In some cases a previous request will be implied, as where the money was obtained by duress either of person or property, or by deceit, or where there has been a subsequent express promise to repay the money * * *. But where the payment is entirely voluntary,—where there is no subsequent promise to repay,—a previous request must be proved." *Boyer v. Richardson*, 52 Neb. 156 (71 N. W. 981).

See, also, *Helm v. Smith-Fee Co.*, 76 Minn. 328 (79 N. W. 313) ; *Fox v. Easter*, 10 Okla. 527 (62 Pac. 283) ; *Murphree Ins. Agency v. Pinnington*, 201 Ala. 500 (78 So. 854) ; *Cape Girardeau Bell Tel. Co. v. Estate of Hamil*, 153 Mo. App. 404 (134 S. W. 1103) ; *Huguet v. Owen*, 1 Nev. 464. All other questions have been carefully examined.

The case is—*Affirmed*.

ALBERT, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.