Argued and submitted May 15, affirmed November 4, 1992

Gary B. TAYLOR, D.C.,
Roberta L. Mower, D.C., Scott Lampshire, D.C.,
and Thomas J. Bolera, D.C.,
*Appellants,*

*v.*

Herbert A. HENDER,
Melvin C. Rose
and Professional Evaluation Services, P.C.,
an Illinois professional corporation,
*Respondents.*

(89-6-237; CA A69756)

840 P2d 1331

Anthony A. Allen, Salem, and Mark E. Griffin, Portland, argued the cause for appellants. With them on the brief were Daniel J. Gatti and Gatti, Gatti, Maier & Associates, Salem, and Griffin & McClandish, Portland.

James C. Edmonds, Salem, argued the cause for respondents. With him on the brief were Michael C. McClinton, Steven M. Lippold and Clark, Lindauer, McClinton, Krueger, Fetherston & Edmonds, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

## WARREN, P. J.

In this civil proceeding under the Oregon Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 to 166.735, plaintiffs appeal from a summary judgment for defendants. We affirm.

Plaintiffs are chiropractors licensed in Oregon. Defendants are an Illinois professional corporation, Professional Evaluation Services (PES), and its principal shareholders and employees, Hender and Rose. A number of insurance companies, including State Farm Mutual Automobile Insurance Company (State Farm), retained PES to assist them in determining whether chiropractic treatments by plaintiffs to their insureds were necessary and whether the expenses incurred for the treatments were reasonable. Plaintiffs alleged that, as a result of defendants' evaluations, they suffered harm to their professional reputation and loss of income. They brought this action, seeking injunctive relief, ORS 166.725(6), and actual and treble damages. ORS 166.725(7)(a). Defendants moved for summary judgment, and the trial court granted the motion.

■ Plaintiffs first argue that the trial court improperly placed an initial burden on them to show the existence of a triable issue of material fact. We disagree. In a summary judgment proceeding, the moving party has the burden of showing that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. ORCP 47C; *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). Once the moving party satisfies that burden, it is then incumbent on the opposing party to show, by affidavit or otherwise, that a genuine issue of material fact does exist. The opposing party may not rest on the allegations in its pleadings. ORCP 47D; *Baker v. Mohr*, 111 Or App 592, 595, 826 P2d 111 (1992).

In this case, defendants moved for summary judgment on the basis of memoranda, pleadings, exhibits, deposition testimony and other documents filed with the court. Plaintiffs opposed the motion, relying on their memoranda, exhibits and affidavits. Plaintiffs' assertion that the trial court improperly placed the burden apparently stems from an

opinion letter written to the parties' counsel in which the court stated:

> "After viewing this material, it is the court's opinion that the plaintiffs have failed to demonstrate that there is a genuine issue of material fact that the defendants have engaged in the predicate acts that would establish a pattern of racketeering activity."

It is clear, however, from the judgment and from the record that the trial court, after considering all of the evidence submitted by both sides, concluded that there was no genuine issue of material fact regarding the predicate offenses alleged. The trial court did not place the initial burden on plaintiffs.[1]

■     Next, plaintiffs argue that the trial court erred in granting summary judgment to defendants on the merits. We review the record in the light most favorable to plaintiffs. *Seeborg v. General Motors Corporation, supra*, 284 Or at 699.

■     To sustain an ORICO action, a plaintiff must demonstrate, among other things, that the defendant had engaged in "a pattern of racketeering activity," ORS 166.720, and that, as a result of that illegal activity, the plaintiff had suffered personal damage.[2] ORS 166.725(6), (7)(a); *Riddle v. Eugene Lodge No. 357*, 95 Or App 206, 216, 768 P2d 917 (1989). "Pattern of racketeering activity," as defined in ORS 166.715(4),

> "means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents,

---

[1] The amended summary judgment provides:

"Having reviewed the entire record, and all the pleadings, the court has now determined that there are no genuine issues of material fact which support Plaintiffs' contentions that Defendants have engaged in the predicate acts that would establish a pattern of racketeering activity and has concluded, therefore, that Defendants are entitled to judgment as a matter of law."

[2] Both parties phrased the personal damage requirement as an issue of "standing." *See, e.g., National Enterprises v. Mellon Financial Services*, 847 F2d 251 (5th Cir 1988). In the motion to dismiss and in the summary judgment proceeding, defendants argued that plaintiffs had no standing to sue, because they had suffered no direct injury as a result of the alleged ORICO violations. Plaintiffs countered that they had standing, because they had suffered loss of income and harm to reputations. However, the parties did not brief the issue and we do not address it.

provided at least one of such incidents occurred after November 1, 1981, and that the last of such incidents occurred within five years after a prior incident of racketeering activity."

In *Computer Concepts, Inc. v. Brandt*, 98 Or App 618, 780 P2d 249 (1989), *aff'd* 310 Or 706, 801 P2d 800 (1990), we held that "the 'pattern of racketeering' element in an ORICO claim is satisfied by two incidents of 'racketeering activity,' interrelated as defined in ORS 166.715(4)." 98 Or App at 632.

Plaintiffs alleged that defendants had engaged in five types of predicate offenses of racketeering activity. The first is mail fraud.[3] ORS 166.715(6)(b); 18 USC § 1961(1)(B); 18 USC §§ 1341, 1346. To sustain a mail fraud claim, a plaintiff must show that "(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *See, e.g., Schreiber Distributing v. Serv-Well Furniture Co.*, 806 F2d 1393, 1400 (9th Cir 1986).

As evidence on the mail fraud claim, plaintiffs submitted an affidavit, with two exhibits attached, from Taylor, one of plaintiffs. In the affidavit, Taylor stated that defendants had evaluated a number of his patient billings or files and that, because of the evaluations, he had suffered harm to his reputation and loss of income. He claimed that "[defendants'] evaluations * * * have the appearance of some validity but * * * in fact lack total reliability and are masqueraded deceptions upon which there is no reliable basis [*sic*]." Exhibit 1 is a sample statement by PES that detailed the adequacy of a chiropractic treatment. Exhibit 2 is a letter from State Farm to its insured, informing her that it had reduced the allowable amount of the bill charged by her chiropractor. It stated that, after consultation with an independent medical consultant, State Farm had concluded that

---

[3] On the mail fraud allegation, the trial court initially granted defendants' motion to dismiss for failure to state a claim. In the summary judgment proceeding, however, plaintiffs moved for leave to file an amended complaint that realleged the mail fraud claim, and the trial court granted the motion. That claim was before the trial court in the summary judgment proceeding. We reject defendants' argument that we should not consider that claim simply because the trial court initially granted their motion to dismiss on that claim.

"the level or amount of care necessary to diagnosis [*sic*] and treat the reported injuries was excessive." Although that affidavit and its exhibits suggest that defendants might have engaged in chiropractic evaluations that were incorrect, they do not show that defendants had "formed a scheme or artifice to defraud." Engaging in evaluations that plaintiffs believe had no valid basis, without more, is insufficient to raise even an inference of a fraudulent scheme or artifice.

The remaining predicate offenses include falsifying business records, ORS 166.715(6)(a)(Q); ORS 165.080(1); obtaining execution of documents by deception, ORS 166.715(6)(a)(Q); ORS 165.102(1); theft by deception, ORS 166.715(6)(a)(K); ORS 164.085(1)(a)(b); and theft of services. ORS 166.715(6)(a)(K); ORS 164.125(1)(a). All of them require that defendants have engaged in some sort of fraudulent acts or mispresentations.

The offense of falsifying business records requires a "falsification" of an entry in business records, be it making a false entry or failing to make a true entry, or any type of action affecting a true entry. ORS 165.080(1).[4] Similarly, obtaining execution of documents by deception requires that the perpetrator use fraud, deceit or subterfuge to obtain the execution of a written instrument. ORS 165.102(1);[5] *State v. Romig*, 73 Or App 780, 787, 700 P2d 293, *rev den* 299 Or

---

[4] ORS 165.080(1) provides:

"A person commits the crime of falsifying business records if, with intent to defraud, the person:

"(a) Makes or causes a false entry in the business records of an enterprise; or

"(b) Alters, erases, obliterates, deletes, removes or destroys a true entry in the business records of an enterprise; or

"(c) Fails to make a true entry in the business records of an enterprise in violation of a known duty imposed upon the person by law or by the nature of the position of the person; or

"(d) Prevents the making of a true entry or causes the omission thereof in the business records of an enterprise."

[5] ORS 165.102(1) provides:

"A person commits the crime of obtaining execution of documents by deception if, with intent to defraud or injure another or to acquire a substantial benefit, the person obtains by means of fraud, deceit or subterfuge the execution of a written instrument affecting or purporting to affect the pecuniary interest of any person."

663 (1985). As evidence of those predicate offenses, plaintiffs relied on an exhibit to their second amended complaint that is similar to the exhibits discussed above. Plaintiffs also submitted supplemental affidavits and exhibits. Those documents demonstrate, at most, that defendants, by providing independent evaluations to State Farm and other insurance companies, had assisted them in controlling their business costs. The evidence does not create a genuine issue of material fact as to whether defendants had falsified an entry in their business records or whether they had committed fraud to obtain the execution of a written instrument.[6]

Finally, plaintiffs' claims of theft by deception and theft of services as predicate offenses are frivolous. *No* evidence in the record suggests that defendants ever obtained property or services from anyone by deception or by any other illegal means. ORS 164.085(1)(a)(b);[7] ORS 164.125(1)(a).[8] *State v. Worden*, 115 Or App 376, 838 P2d 640 (1992).

---

[6] The only evidence that comes anywhere near to creating a triable issue of material fact as to whether defendants had engaged in some sort of fraudulent conduct is a statement contained in an affidavit by one of plaintiffs' counsel. In that affidavit, the attorney states:

"I have personally talked to a former file review doctor for PES who has indicated a willingness to testify that the file reviews were at one time done by secretaries and not chiropractic physicians and these secretaries had a means by which they evaluated the treating physicians' bill via a coding system and thus reduced the bill according to the system being used at that time."

Defendants argued below that that statement should be stricken, because the attorney was relating facts not within his personal knowledge. Defendants also argued that, although ORCP allows an attorney's affidavit to include otherwise admissible facts or opinions from "an unnamed qualified expert," ORCP 47E, it does not allow an attorney's affidavit to relate the testimony of a non-expert witness about the facts. We agree with defendants that what the former PES doctor intended to testify about were not opinions of an unnamed expert and, therefore, they were not matters on which the attorney was competent to testify. They could not be considered in the summary judgment proceeding. *Ensley v. Fitzwater*, 59 Or App 411, 414, 651 P2d 734 (1982).

[7] ORS 164.085(1) provides, in part:

"A person, who obtains property of another thereby, commits theft by deception when, with intent to defraud, the person:

"(a) Creates or confirms another's false impression of law, value, intention or other state of mind which the actor does not believe to be true; or

"(b) Fails to correct a false impression which the person previously created or confirmed * * *."

[8] ORS 164.125(1) provides, in part:

"A person commits the crime of theft of services if:

Affirmed.

---

"(a) With intent to avoid payment therefor, the person obtains services that are available only for compensation, by force, threat, deception or other means to avoid payment for the services * * *."